**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 12-3182 JB

RICHARD SANCHEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Richard Sanchez's Motion to
Modify Conditions of Release, filed September 11, 2013 (Doc. 339)("Motion").  The Court held
a hearing on October 8, 2013.   The primary issue is whether the Court should modify the
conditions of release imposed on Sanchez to remove the condition requiring electronic
monitoring.  The Court will grant the Motion in part and deny it in part.  The Court will allow the
monitoring bracelet to be removed for Sanchez' baptism.  The Court will otherwise deny the
Motion, because electronic monitoring remains necessary to mitigate the risk of flight and the
danger to the community that Sanchez poses.

**FACTUAL BACKGROUND**

The Motion lays out the factual background as follows:

      1.     On December 14, 2012, Mr. Sanchez was arrested for conspiracy
to possess with the intent to distribute 5 kilograms or more of cocaine, in violation
of 21 U.S.C. § 846.

      2.     On December 17, 2012, Mr. Sanchez appeared before Federal
Magistrate Judge Robert Hayes Scott for an initial appearance.  Mr. Sanchez was
ordered detained.

      3.     On December 19, 2012, Mr. Sanchez appeared before Federal
Magistrate Judge Robert Hayes Scott for an arraignment and detention hearing.

Mr. Sanchez was ordered detained pending trial.

       4.     On January 30, 2013, Mr. Sanchez, through counsel, filed a motion requesting release from custody.

       5.     On March 4, 2013, this Honorable Court held a hearing on Mr. Sanchez's motion requesting release from custody and ordered him released to the third party custody of the La Pasada Halfway House.

       6.     On April 4, 2013, Mr. Sanchez, through counsel, filed an unopposed motion to modify conditions of release to allow Mr. Sanchez to return home under the third party custody of his wife, Charlene Martinez.

       7.     On April 5, 2013, this Court authorized Mr. Sanchez's release to the third party custody of Ms. Martinez. One of the conditions of Mr. Sanchez's release, however, is that Mr. Sanchez must wear an electronic monitoring device.

Motion ¶¶ 1-7, at 1-2.

## PROCEDURAL BACKGROUND

Sanchez moves the Court for his release, explaining:

       8.     Mr. Sanchez has been completely compliant with all the Court imposed conditions of release. Indeed, United States Pre-trial Services Officer Jason Beatty advised undersigned that Mr. Sanchez has done everything the Court has asked of him and has not had any problems with his supervision.

       9.     Since his release to the third party custody of Ms. Martinez, Mr. Sanchez has been able to secure employment with his former employer, General Distributors Inc. Mr. Sanchez has been employed with that company for over fourteen (14) years. His position is freezer area leader. He is responsible for "receiving, separating, pulling orders, inventory control and training new hires." Mr. Sanchez's schedule varies depending on the company's daily workload but is typically from 4:00 a.m. to 11:30 a.m. As part of his employment, Mr. Sanchez must wear heavy work boots. The electronic monitoring device frequently interferes with Mr. Sanchez's work boots as the device causes irritation to Mr. Sanchez's skin and severe discomfort as he is trying to fulfill his employment responsibilities.

       10.    Since his release, Mr. Sanchez has also been attending religious services twice per week. Because of the monitoring device, he has had to leave the Wednesday religious services early. Mr. Sanchez also cannot be baptized as the device cannot be submerged in water.

       11.    The electronic monitoring device has been causing difficulty with Mr. Sanchez's familial responsibilities. Mr. Sanchez and his family have only

one vehicle.   Mr. Sanchez has to ride his bicycle to his wife's place of employment in order to pick up the family vehicle and thereafter proceed to pick up the couple's two daughters from school.   If Ms. Martinez's work schedule changes, Mr. Sanchez is not be able to pick up his daughters on time because he has to first call his pre-trial services officer to advi[s]e of the change in circumstances and schedule.   If Mr. Sanchez proceeds to pick up his daughters from school without first notifying his supervising pre-trial services officer, Mr. Sanchez risks a possible violation of conditions of release.

12.     United States Probation/Pre-trial Officer Jason Beatty advised undersigned that on the issue of removal of the electronic monitoring device, he defers to the Court.   Mr. Beatty added that Mr. Sanchez has done everything that has been required of him and Mr. Beatty has not had any non-compliance issues with Mr. Sanchez.

13.     Since Mr. Sanchez has been compliant with all his conditions of release and his supervising pre-trial services officer did not voice opposition, Mr. Sanchez respectfully requests this Court authorize the removal of the condition requiring electronic monitoring.

14.     Undersigned counsel was in contact with Assistant U.S. Attorney, Joel Meyers, who advised that the government opposes the removal of the condition of pre-trial release requiring electronic monitoring.

15.     Mr. Sanchez submits that the Eighth Amendment to the United States Constitution requires that a defendant be released on the least restrictive conditions.   See United States v. Crowell, 2006 WL 3541736, at *7 (W.D.N.Y. 2006).   If a defendant is not remanded, he must be released on personal recognizance or on an unsecured bond unless the court determines that these conditions are insufficient.   18 U.S.C. § 3142(b).   In that event, the court is obligated to fashion a bail package consisting of "the least restrictive further condition or conditions" that will reasonably assure the defendant's appearance and the safety of the community.   18 U.S.C. § 3142(c)(1)(B).

16.     Mr. Sanchez has been on the electronic monitoring device for over five months.   Since he has been compliant, he has demonstrated that electronic monitoring is no longer necessary to ensure his appearance in court and the safety of the community.   Mr. Sanchez submits that his proven record of compliance, strong family and community ties and his relative lack of criminal history militate in favor of removal of electronic monitoring.

Motion at ¶¶ 8-16, at 2-4 (citations and footnote omitted).   In a footnote, Sanchez underscores that Mr. Beatty did not oppose or concur in his request, leaving the issue to the Court's discretion.   See Motion ¶ 13, at 3 n.1.

Plaintiff United States of America opposes the Motion.  See United States' Response to Defendant's Motion to Modify Conditions of Release, filed October 7, 2013 (Doc. 362)("Response").  It states:

1.      On December 12, 2012, a federal Grand Jury sitting in Las Cruces, New Mexico returned an Indictment (Doc. 2) charging[] defendant and 10 others with, inter alia, Conspiracy to Distribute Five Kilograms and More of Cocaine in violation of 21 U.S.C. § 846.

2.      On December 19, 2012, . . . Robert Hayes Scott, United States Magistrate Judge, issued an Order of Detention Pending Trial (Doc. 108) finding "defendant ha[d] not rebutted the presumption established by finding [. . .] that no condition will reasonably assure defendant's appearance and the safety of the community."  See Doc. 108.  The Court also made the alternative findings that defendant was both a serious risk of flight and a serious danger to the community.  Id.

3.      On January 30, 2013, defendant filed an appeal of Judge Scott's Order seeking release on his own recognizance or, in the alternative, release to the third-party custody of the his fiancée.  Doc[.] 183 at 1 and 4.

4.      On March 4, 2013, this Court issued an Order (Doc. 226) granting, in part, and denying, in part, defendant's motion.  In doing so, the Court released defendant to the La Pasada Halfway House subject to stringent conditions.  See generally Doc. 226.

5.      On April 5, 2013, with no opposition from the government, this Court allowed defendant to leave the Halfway House and instead reside with -- and be subject to the third-party custody of -- his fiancée.  See Docs. 254 and 256. One of the conditions of his release was that defendant would also be subject to location monitoring.  See Doc. 256 part a.

6.      Defendant, like many before him, now seeks to remove one of the very preconditions for the lack of government opposition to his release from the Halfway House.

7.      For the following reasons, defendant's motion should be denied.

8.      Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

- 4 -

9.      Defendant has presented a dearth of factual information that would justify -- yet again -- modifying defendant's conditions of release under 18 U.S.C. § 3142(f).  Conspicuous only by its absence is any indication of new information supporting defendant's motion.    Other than skin "irritation" which he characterizes as "severe discomfort" [Motion ¶ 9, at 2], defendant has utterly failed to present any indication whatsoever of any evidence which "was not known to the movant at the time of the [previous detention] hearing and that [the new information] has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  The only thing approaching new information is the conceded fact that, to date, defendant has not violated conditions of his release.  Contrary to defendant's suggestion, however, this fact does nothing more than validate the current conditions of release and support their continued appropriateness.

Response ¶¶ 1-9, at 1-3 (footnote omitted).  The United States clarified that it "does not object to

the temporary removal of the location monitoring device so that defendant may undertake the

ritual of Baptism."  Response ¶ 9, at 3 n.1.

At the hearing, Sanchez substantially recited the arguments in his Motion: that he has

complied with all conditions; that the Eighth Amendment requires that he be released under the

least restrictive conditions; that the monitoring device irritates his skin and makes wearing his

heavy work boots uncomfortable; that it is difficult to coordinate Beatty's schedule with his

family schedule; and that he would like to be baptized.   See Transcript of Hearing at 1:21-5:3

(Johnson), taken October 8, 2013 ("Tr.").[1]  The United States stated that Sanchez' argument is,

in essence, that he deserves "a reward for doing exactly what he's supposed to do"; in its view,

the mere fact that he has been compliant is a direct indication to this Court that these are the appropriate conditions in order to manage the obvious danger to the community that Mr. Sanchez faces [sic] -- not just from the charges[] that are pending before him, but also his criminal history, and as well as managing any potential flight risk.

_____

[1]The Court's citations to the transcript of the hearing refer to the Court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 5 -

Tr. at 6:8-23 (Meyers).   As for the boots, the United States contended that other criminal Defendants have to wear high boots, and that Pretrial Services could modify the devices to accommodate his boots and prevent skin irritation; it noted that, "[s]itting here today, Mr. Sanchez does not look like he's suffering from severe discomfort."   Tr. at 5:24-6:11 (Meyers).  The United States contended that, as to the scheduling concerns, requiring Beatty to call Sanchez is not unduly burdensome: indeed, in its view, there is no evidence that the condition has prevented Sanchez from doing anything specific.   See Tr. at 6:12-21 (Meyer).  The United States noted that it had agreed not to oppose Sanchez' placement in a halfway house based on the electronic monitoring requirement.   See Tr. at 6:22-7:4 (Meyers).  The United States contended that "[t]here is no constitutional right to be released" and that, in this case, based on the grand jury's charges, the Court can presume that "Mr. Sanchez[] is both a flight risk and a danger to the community."   Tr. at 7:5-11 (Meyers).  The United States reiterated that it does not oppose Sanchez' request that the monitor be removed for baptism.   See Tr. at 7:12-25 (Meyers).  The United States stated that,

> other than that . . . , all we've heard is compliance, compliance, compliance.  And it's interesting to note that Mr. Beatty is probably the person who is in the best position to state the compliance, and he has indeed done that.   And it's also interesting his lack of position on this issue here, Judge.  I would venture so far to say that in Mr. Beatty's view, or if it was Mr. Beatty's view that somehow that compliance with the conditions was deserving of reward, I think that would be his position.  I don't intend to speak for him however.

Tr. at 8:1-11 (Meyers).

The Court asked what purpose the monitoring served -- that is, whether Sanchez is a flight risk or a danger to the community.   See Tr. at 8:14-17 (Court).  The United States responded:

> I think it's both, Judge.  I mean, obviously the RF monitoring is not going

to provide the same level of security, both managing the flight risk or a danger to the community, as would GPS monitoring, which was originally installed in this case until you received a phone line, so as far as flight risk, you know, unless -- and basically with RF monitoring someone gets a head start having the RF monitoring.  Or usually in situations like this, someone is going to cut the device off anyway.  But as far as a danger to the community, I think it's a tool that's necessary for Pretrial Services to be able to manage its supervisory conditions of Mr. Sanchez.  For example, his comings and goings, the times he's allowed to leave his house, and the times he needs to return home.  And I think this is a necessar[y] tool for pretrial to monitor the compliance.  Certainly it's not going to keep Mr. Sanchez in Bernalillo County or the District of New Mexico if his true intent was to flee, Judge.  And I think it's just one added layer of protection there.  But as far as what it's designed to effect, I think it's much more effective managing the danger to the community.

Tr. at 8:18-9:16 (Meyers).  Anticipating that the Court might want to know where Sanchez fits into the scheme underlying this multi-Defendant case, the United States volunteered that Sanchez is not a very significant player in the scheme.  See Tr. at 9:19-10:15 (Myers).

Sanchez replied that he has rebutted the presumption that he should be detained, because he has demonstrated that he is not a danger to the community or a flight risk.  See Tr. at 10:19-11:7 (Johnson).  Sanchez also contended that the evidence against him is weak, because the United States has misidentified Sanchez based on certain telephone records; he noted that "there were no buys from Mr. Sanchez; he was never observed doing a drug transaction, selling drugs; there was never an observation of money exchanged.  Now, the Government believes that there was some money exchanged.  However, the evidence [in the opinion of Sanchez' counsel] is weak."  Tr. at 11:8-12:2 (Johnson).  Sanchez also stated that conditions of supervised release should not be punitive, that he has complied, and that, particularly in light of the presumption of innocence, the Court should remove this condition and release him to his wife's custody, with all other conditions in place.  See Tr. at 12:3-15 (Johnson).  Sanchez noted that "the 2012 DWI that was pending has been dismissed.  So Mr. Sanchez . . . has a very limited criminal history."  Tr. at 12:12-18 (Johnson).

The Court noted that, when it was in private practice, it had represented General Distributors, and asked Sanchez to describe the sort of shoes he wears.  See Tr. at 12:19-13:5 (Court, Defendant).  Sanchez replied:

> THE DEFENDANT:  I work in the freezer, Your Honor, so they are like really heavy insulated workboots.  They come up over where the monitor is, so when I am walking around with the boots on, you know, it rubs it back and forth on the leg, or else it pushes it all the way up to where it can't go anywhere.  So the little lines where the skin comes out of the little buckles and all that.
>
> THE COURT:  So you don't get up in the morning and put on a pair of boots to go out to the warehouse, right?
>
> A.      I wake up in the morning.  I put my boots on and go to work in my boots.
>
> Q.      These are insulated boots?
>
> A.      Yeah, real thick, for minus 40 degree temperature.

Tr. at 13:6-21 (Defendant, Court).

The Court then turned to the United States Probation Office ("USPO"); the USPO stated that many Defendants work in similar situations and must use the monitor.  See Tr. at 13:25-14:6 (Probation Officer).  The USPO recognized that monitors must be worn low on the ankle and stated that sometimes putting on boots can push the monitor up tighter on a subject's leg.  See Tr. at 14:7-17 (Probation Officer).  The USPO did not recommend changing the fit, "because if you make it too lo[o]se where it pushes up even higher, less contact with the skin could generate alerts to indicate he's tampering with it, even when he's not."  Tr. at 14:18-22 (Probation Officer).  The Defendant stated:

> THE DEFENDANT:  It pushes it up.  Even if I push it down while I have it on, when I come in and out of the freezer, it pushes it back up to where it stays real tight on top.
>
> THE COURT:  And what's the worst thing that's happening?  It's causing some irritation?

A.     Yes.  And it did scab a little on the front part where the thin skin, where the bone is.

PROBATION OFFICER:  The other thing we can try, Your Honor -- and I won't know maybe until we try it -- typically, we like the sock worn over the base.  Let's try the sock underneath, and see if that helps, if the Court continues him on location monitoring.

THE COURT:  That's what I would think is could you wear a sock underneath, and then put the device over the sock.  I would think that and a little talcum powder would keep friction down, moisture down and things like that.

Tr. at 15:1-19 (Defendant, Court, Probation Officer).

The Court then turned to the scheduling issue, and the Defendant stated:

We have a certain time scheduled, I'll call him every week to do my schedule, to where she's getting off a certain time, and then have a cancellation at work -- she's a hairstylist -- so she'll get off one to two hours earlier, or sometimes more. And sometimes when I tried to get ahold of Mr. Beatty he's not in the office or near the computer where he can change it.  So that's when have to wait.

Last week -- I mean, it's okay now for the summer.  Last week I dropped off the vehicle because I couldn't get a hold of him, and me and my daughters walked home.  But now in the winter it's going to be harder for that because they're still little.  If I try to get hold of him and he's not in the office or at a computer --

THE COURT:  How many times has that happened where you tried the call him and haven't immediately got hold of him?

A.     Like maybe two or three times.

THE COURT:  And you've been in custody for how long?

A.   On the monitor I've been five months.

Tr. at 15:25-16:22 (Defendant, Court).  Upon the Court's request, the USPO clarified that it is fine to shower with this device, but one should not keep it submerged while bathing, and one should not swim.  See Tr. at 17:1-11 (Probation Officer).  After some discussion, Sanchez agreed that he could set his baptism ahead of time and inform Mr. Beatty of the time he would need the

bracelet removed.  <u>See</u> Tr. at 17:12-18:11 (Court, Defendant).

      The Court stated:

    I still think this monitoring is important from my standpoint to reduce to acceptable levels the risk of flight.  And so you know, I reviewed your entire bail report today.  So we go back to the very beginning of this.  You know, you did have some substance abuse addiction.  This case is very serious.  You may not be the biggest player in it, but given your arrest history and this substance abuse and the nature of this alleged offense and the serious charges, I think to reduce the risk to levels that the Court accepts, I think I want to leave in place the electronic monitoring.

      I'd like to try the boots with the sock on the inside, a little talcum powder, and I think that may reduce the friction.

      Let's monitor him.  If it becomes a real problem over the winter getting hold of Mr. Beatty, then maybe we'll do something.  But two or three times over 5 months, I just think probation officers are extremely busy.  And that doesn't strike me as too much of a restriction.

Tr. at 18:13-19:8 (Court).  The Court then turned to the baptism, and, after a discussion with the USPO, stated that it was comfortable removing the device on a Wednesday evening so that the baptism could go forward.  <u>See</u> Tr. at 19:9-20:11 (Court, Probation Officer).  As for the coordination issue, the USPO and the United States agreed that they could build time into the location monitoring schedule to increase the schedule flexibility.  <u>See</u> Tr. at 20:15-21:7 (Probation Officer, Court, Myers).

      The Court and Sanchez then exchanged the following colloquy regarding whether the Court would entertain another motion on this topic after a certain timespan:

    MS. JOHNSON:  Thank you, Your Honor.  I would respectfully request -- I know it's been the practice in this district, and my concerns with pretrial services that typically after an individual has been on conditions of release that include electronic monitoring, if they have demonstrated a proven track record of compliance, no violations, Pretrial Services cannot point to any factors that would indicate that he would flee or pose a danger to the community, that the Court reconsiders the removal of the electronic monitoring device.

      I would ask, would the Court consider -- obviously, this case is going to be

pending for quite some time. It's quite an extensive case. Would the Court consider us returning perhaps in three months -- by that point, he will have been on this monitoring device for nine months -- removing it at that point?

Your Honor, I'm just concerned that this is becoming a punitive tool here. His arrest record, Your Honor, you have all of them -- resulted in dismissals except for one in 2003, which is 10 years old. There is no evidence that he is a flight risk. He has no failures to appear. There is no evidence he's a danger to the community. I know that the strength of the evidence is one of the factors the Court considers.

I would submit to the Court, Your Honor, that even by the Government's own admission he is not a significant player. And I intend to have this discussion with Mr. Myers where they've misidentified, and have indicated that another individual is Mr. Sanchez. I would ask that the Court at least consider removing it in perhaps 3 months.

THE COURT: Well, I don't mean anything here punitive. I'm trying to manage risk, as I do with anybody as far as their ability, you know, the risk of nonappearance, and their danger to the community. And we've gone a long ways here from where I think Judge Scott started with this case and where I am now. So I think we've managed it well, and will continue to try to do so. I'm not very enthusiastic about returning, saying, well, he's doing very well, therefore, as a reward, he should get it taken off. Those don't hit me very well. Because those are kind of the conditions of managing the risk.

You're welcome to talk to Mr. Myers, and if y'all agree that there is no need for the monitoring, then I probably will go along with it too. But if it's just another one of these, then -- I don't know what the other judges are doing, but I typically resist this sort of motion -- just, well, he's doing well, let's reduce his conditions. That seems to me, we worked hard early to get the appropriate conditions. They're working well. So I guess I don't like to touch them unless everybody is sort of in agreement that something has changed to reduce the risk. If that's any guidance to you.

Tr. at 21:9-23:17 (Johnson, Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.

§ 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g)     **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> > (1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2)     the weight of the evidence against the person;
> >
> > (3)     the history and characteristics of the person, including --
> >
> > > (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> >
> > (4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as

collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption can arise that the defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[2](per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of incarceration of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant

---

[2]United States v. Villapudua-Quintero is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that United States v. Villapudua-Quintero, United States v. Silva, 7 F.3d 1046, 1993 WL 394873 (10th Cir. 1993)(unpublished), and United States v. Hudak, 77 F. App'x 489 (10th Cir. 2003)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.
.

committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 1993 WL 394873, at *1.  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

 To determine whether there are conditions of release that will reasonably assure the appearance of the person as required, and to assure the safety of others and the community, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  When the presumption applies, should the defendant carry his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  Notably, however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

 It violates due process to punish a pretrial detainee before a lawful conviction.  See United States v. Salerno, 481 U.S. 739, 747 n.4 (1987)(recognizing that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal").  The Tenth Circuit has held that detention of a criminal

defendant pending trial violates due process when the detention is excessively prolonged and is not regulatory, but punitive.  See, e.g., Peoples v. CCA Det. Centers, 422 F.3d 1090, 1106 (10th Cir. 2005), opinion vacated in part on other grounds on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006); United States v. Hudak, 77 F. App'x 489, 489 (10th Cir. 2003)(unpublished)("Detention of a criminal defendant pending trial does not violate a defendant's due process rights under the Fifth Amendment, so long as the confinement does not amount to punishment."); United States v. Cos, 198 F. App'x 727, 732 (10th Cir. 2006)(unpublished)(stating that "due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." (quoting United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986))).  To determine whether a defendant's detention implicates due process, courts look to "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." United States v. Cos, 198 F. App'x at 732.

## ANALYSIS

The Court will grant the Motion in part and deny it in part.  This case is one where the nature of the charges results in a presumption that Sanchez should be detained as a flight risk and as a danger to the community.  See 18 U.S.C. § 3142(e)(3).  Although Sanchez has produced evidence of compliance and evidence of long-term employment, and thus has met his burden of production, the United States has met its burden of persuasion.  Given the seriousness of the charges against Sanchez, his criminal history, his drug abuse history, and the potential of danger to the community that his release would pose, it is not appropriate to eliminate electronic monitoring at this stage.  See 18 U.S.C. § 3142(g).  Further, the Court concludes that the United States has shown that electronic monitoring is necessary to reduce the risk of flight to acceptable

levels.  The Court also does not believe that having two or three instances of trouble reaching Mr. Beatty over five months of monitoring poses any severe problems for Sanchez; if the problem recurs more frequently, Sanchez may approach the Court at that time.  The Court will, however, permit Sanchez to arrange with Pretrial Services to remove the monitoring bracelet for the period necessary for him to be baptized.

**IT IS ORDERED** that Defendant Richard Sanchez's Motion to Modify Conditions of Release, filed September 11, 2013 (Doc. 339), is granted in part and denied in part.  The Court will allow the monitoring bracelet to be removed for the baptism.  The motion is otherwise denied.

.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven C. Yarbrough
  Acting United States Attorney
Reeve L. Swainston
Joel Meyers
Stephen R. Kotz
Cynthia L. Weisman
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Erlinda O. Johnson
Albuquerque, New Mexico

   *Attorney for the Defendant*